IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH TAGGART, *on behalf of himself and others similarly situated*,<br><br>*Plaintiff,*<br><br>v.<br><br>THE HONORABLE JEFFREY SALTZ, *et al.*,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 20-01638 |

**PAPPERT, J.**                                                                                       October 7, 2020

**<u>MEMORANDUM</u>**

These Motions to Dismiss arise in the context of a more than decade-long foreclosure dispute between Kenneth Taggart and Wells Fargo Bank, N.A. Taggart, charitably put, is a serial *pro se* litigant who has been involved in twenty-seven actions in the United States District Court for the Eastern District of Pennsylvania.[1] After losing in state court, Taggart sued Montgomery County Court of Common Pleas Judge Jeffrey Saltz,

---

[1] Most of Taggart's suits are attempts to avoid the obligations of his mortgages. He has not received a favorable judgment in any of his actions and he has been warned that "his numerous cases against Wells Fargo . . . are an abuse of the judicial process." *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 12-3177; s*ee also Taggart v. Harrison*, No. 07-3645; *Taggart v. Chase Bank USA, N.A., et al.*, No. 09-1533; *Taggart v. Norwest Mortgage, Inc., et al.*, No. 09-1281; *Taggart v. Greenpoint Mortgage Funding, Inc., et al.*, No. 09-3416; *Taggart v. Greenpoint Mortgage Funding, Inc., et al.*, No. 09-3417; *Taggart v. Chase Bank USA, N.A.*, No. 09-3761; *Taggart v. Wells Fargo Home Mortgage, Inc., et al.*, No. 10-843; *Taggart v. BAC Home Loans Servicing, LP, et al.*, No. 10-1223; *GMAC Mortgage LLC, et al. v. Taggart*, No. 10-2393; *Wells Fargo Bank, N.A. v. Taggart*, No. 10-2657; *Taggart v. Franconia Township, et al.*, No. 10-2725; *Deutsche Bank National Trust Co. v. Taggart*, No. 11-4668; *Taggart v. GMAC Mortgage LLC, et al.*, No. 12-415; *Taggart v. County of Montgomery, et al.*, No. 12-1913; *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 12-2359; *Taggart v. GMAC Mortgage LLC, et al.*, 12-4077; *Taggart v. Deutsche Bank Nat'l Co., et al.*, No. 12-4455; *Taggart v. United States*, No. 15-mc-255; *Taggart v. Bank of New York Mellon, et al.*, No. 15-2985; *Taggart v. Morgan Stanley ABS Capital I Inc. Trust, et al.*, No. 16-062; *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 16-063; *Taggart v. United States Dep't of Justice, et al.*, No. 16-4040; *Taggart v. United States Dep't of Justice*, No. 17-3210; *Taggart v. Montgomery County Court of Common Pleas, et al.*, No. 18-1409; *Taggart v. New Century Financial Services, Inc., et al.*, No. 20-4261.

1

Pennsylvania Superior Court Judges Ann Lazarus, Paula Ott and Susan Peikes Gantman, Wells Fargo, Reed Smith LLP and Phelan Hallinan Diamond and Jones, LLP.  Each Defendant moves to dismiss Taggart's Amended Complaint under various theories.  The Court grants the Defendants' Motions and dismisses this case with prejudice.

I

Wells Fargo initiated a foreclosure action against Taggart on April 1, 2010 in Montgomery County.  (Am. Compl. ¶ 17, ECF No. 21.)  Judge Saltz entered judgment for Wells Fargo on March 27, 2018.  (*Id.* at ¶ 18.)  Taggart sought reconsideration, which Judge Saltz denied on April 24, 2018.  (*Id.* at ¶ 19.)  Taggart appealed, and a panel of the Superior Court of Pennsylvania consisting of Judges Lazarus, Ott and Gantman affirmed on August 1, 2019.  (*Id.* at ¶ 20.)  The Pennsylvania Supreme Court subsequently denied Taggart's Petition for Allowance of Appeal.  (*Id.* at ¶ 21.)  Throughout the state-court proceedings, Taggart maintained that Wells Fargo lacked standing because it purportedly did not own the mortgage (on which it sought to foreclose) on April 1, 2010. *See, e.g.*, (Compl. Ex. F at 9–10, ECF No. 1); *Wells Fargo Bank N.A. v. Taggart*, No. 1384-EDA-2018, 2019 WL 3500516, at *4 (Pa. Super. Ct. Aug. 1, 2019).  The state courts considered and rejected that argument. *Id.*

Unsatisfied with the result in state court, Taggart comes now to federal court alleging violations of his federal and state constitutional rights and violations of state and federal law.[2]  *See, e.g.*, (Am. Compl. at ¶¶ 15, 24–25).  The crux of Taggart's

---

[2] Taggart also purports to bring this suit on behalf of all those similarly situated.  He cannot do that because *pro se* litigants in the Eastern District of Pennsylvania may bring claims only on their own behalf.  *See* Notice of Guidelines for Representing Yourself (Appearing "*Pro Se*") in Civil Cases, at 1, E.D. Pa. Pro Se Notice, *approved February 11, 2019*.

2

arguments is that the state courts' decisions were against the weight of the evidence and that Wells Fargo, Reed Smith and Phelan obtained those judgments through fraud and other illegal acts. *See, e.g.*, (Am. Compl. ¶¶ 38, 204–07). Each Defendant moves to dismiss Taggart's Amended Complaint under multiple theories, including: (1) the *Rooker-Feldman* doctrine bars Taggart's claims; (2) Taggart seeks improper relief; and (3) Taggart is estopped from pursuing claims the state courts already addressed.

II

A

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for "lack of subject-matter jurisdiction" over claims asserted in a complaint. Fed. R. Civ. P. 12(b)(1). Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [] requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Defendants make a facial attack on jurisdiction, *see* (Defs. Judges' Mot., at 9–13, ECF No. 40; Defs. Reed Smith's & Wells Fargo's Mot., at 7–9, ECF No. 41-1; Def. Phelan's Mot., at 5–14, ECF No. 43-1), and the Court accordingly accepts as true the allegations in the Complaint. "[W]hen a federal court concludes that it lacks

subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

B

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The court must construe the complaint in the light most favorable to the plaintiff.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted).  However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts.  *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (internal citations and alterations omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the

4

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted).

C

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising subject-matter jurisdiction in a narrow range of cases already heard in state court. *See Exxon Mobil v. Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the doctrine, a losing state-court party is "barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994). "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (internal citations, quotations and alterations omitted).

*Rooker-Feldman* is not implicated every time a federal plaintiff seeks to litigate a matter already determined by a state court: if a federal plaintiff brings "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the doctrine does not apply. *Great W. Mining*, 615 F.3d at 166 (quoting *Exxon Mobil*, 544 U.S. at 293). The Third Circuit has emphasized the narrowness of the doctrine, distinguishing between injuries caused by the state-court judgment and those brought about by the defendants' actions. *See Gray*

*v. Martinez*, 465 F. App'x. 86, 88 (3d Cir. 2012) (citing *Great W. Mining*, 615 F.3d at 167–68). In so doing, the Third Circuit "recognized that caution is now appropriate in relying on [the prior] formulation of the *Rooker-Feldman* doctrine, which focused on whether the state and federal suits were 'inextricably intertwined.'" *Id.* (quoting *Great W. Mining*, 615 F.3d at 169 (internal quotations and citations omitted)); *see also Conklin v. Anthou*, 495 F. App'x. 257, 262 (3d Cir. 2012) ("[Plaintiff] is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question."). If the *Rooker-Feldman* doctrine applies, the Court lacks subject-matter jurisdiction. *Great W. Mining*, 615 F.3d at 164.

### III

The *Rooker-Feldman* doctrine bars each of Taggart's claims. His claims satisfy the first and third factors because he "lost in state court" and the state-court judgments "were rendered before the federal suit was filed." *Id.* at 166. The second and fourth factors are also satisfied because, although Taggart attempts to style his arguments as constitutional claims and state law claims, he effectively complains only of "injuries caused by the state-court judgments" and invites the Court "to review and reject the state judgments." *Id.*

First, Taggart purports to bring several federal and state constitutional claims against Judge Saltz in his personal capacity in Counts I through XXII. The face of the Amended Complaint shows that Taggart complains not of violations and errors committed by Judge Saltz in the process of deciding the state-court action, but of

alleged injuries caused by the state-court judgment, itself. *See, e.g.*, (Am. Compl. ¶¶ 36, 42, 49, 53, 61, 65, 73, 77) (arguing the state-court judgment was against the weight of the evidence and Judge Saltz violated his constitutional rights by entering judgment against him). Count IV most obviously implicates the *Rooker-Feldman* doctrine. There, Taggart claims a violation of his state constitutional property rights and asks the Court to compel Judge Saltz to "adjudicate the claims in the foreclosure action consistent with the evidence and dismiss all claims as required by law to effectuate [his] 'Due Process' rights." (*Id.* at ¶ 80.) That request satisfies the fourth *Rooker-Feldman* factor because, by seeking to "compel" Judge Saltz to "effectuate" his constitutional rights and "adjudicate the claims in the foreclosure action" in his favor, Taggart invites the Court to review and reject the state judgment. (*Id.*) The "critical task" in evaluating the second factor is to "identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Great W. Mining*, 615 F.3d at 167 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)). Taggart complains in Count IV of loss of property, allegedly caused by Judge Saltz's judgment in the state-court proceedings. (Am. Compl. ¶¶ 70, 71, 79.) That claim satisfies the second factor, too.

In Counts I through III and V through XII, Taggart asks the Court to "declare" that Judge Saltz violated his federal and state constitutional rights by his judgment in the state action. *See, e.g.*, (*id.* at ¶¶ 43, 94.) This request does not implicate *Rooker-Feldman* quite as clearly as Taggart's request in Count IV that the Court "compel" the state court to rule in his favor, but it satisfies *Rooker-Feldman* nonetheless. Simply

7

put, Taggart asks the Court to declare that Judge Saltz got it wrong. *Rooker-Feldman* bars such a request for "appellate review of the state-court judgment." *Great W. Mining*, 615 F.3d at 164.

Second, Taggart claims Judges Ott, Lazarus and Gantman violated his federal constitutional rights in Counts XXV through XXX and asks the Court to "declare" that the judges failed to adjudicate his state-court appeal consistent with the evidence. *See, e.g.*, (Am. Compl. ¶¶ 474, 506, 538.) For the reasons explained above, these claims implicate the *Rooker-Feldman* doctrine because Taggart effectively seeks appellate review of the state-court judgment.

Third, in Counts XIII through XVI, Taggart alleges Wells Fargo committed fraud, fraud on the court, unarticulated "tortuous actions," abuse of process and malicious prosecution. *See* (*id.* at ¶¶ 197–274). He asks the Court to "compel the Court of Common Pleas, of Montgomery County, Pennsylvania to vacate the judgment entered on March 27, 2018." (*Id.* at ¶¶ 211, 231, 251, 271.) Although he styles these claims as state law violations that occurred in the process of obtaining the state-court judgments, his requested relief reveals their true nature—Taggart wants the Court to second-guess and vacate the state-court judgments. Like in Count IV, Taggart complains of an "injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Great W. Mining*, 615 F.3d at 167 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)).

Fourth and finally, in Counts XVII through XXIV, Taggart alleges Phelan and Reed Smith, through their representation of Wells Fargo in state court, committed the

same violations. These claims implicate *Rooker-Feldman* for the reasons explained above.

The Court therefore lacks subject-matter jurisdiction over Taggart's claims because, "in order to grant the federal plaintiff the relief sought, the [] court must determine that the state-court judgment was erroneously entered or must take action that would render that judgment ineffectual." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *FOCUS v. Allegheny Cty. Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)); *see also Great W. Mining*, 615 F.3d at 170 n.4 (citing *In re Madera* approvingly).

## IV

Even if the Court had jurisdiction to consider Taggart's claims, they would fail for the following reasons.

## A

In Counts I through III and V through XII, Taggart asks the Court to "declare" that Judge Saltz violated his federal and state constitutional rights. *See, e.g.*, (Am. Compl. ¶¶ 43, 94.) "Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another." *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) (citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–98 (3d Cir. 2000) and *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1553–54 (Fed. Cir. 1994) (en banc)); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Taggart seeks only declaratory relief saying that Judge Saltz violated his rights in the past. Declaratory relief is

improper for that purpose, so the Court could alternatively dismiss Counts I through III and V through XII for failure to state a claim.

Moreover, Counts I through XII hinge on Taggart's contention that Wells Fargo lacked standing in state court and knowingly lied to the state courts about when it took ownership of Taggart's mortgage. *See, e.g.*, (Am. Compl. ¶¶ 36, 47, 59, 71). But Taggart had every opportunity to—and did—pursue this argument in state court. He is estopped from relitigating it in federal court.

The Third Circuit has given clear guidance for district courts analyzing questions of issue preclusion:

> Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity. [] *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("[T]he usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum."); *Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."); *Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."). Stated broadly, issue preclusion prevents relitigation of the same issues in a later case.

*Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002). "A federal court looks to the law of the adjudicating state to determine its preclusive effect." *Id.* at 573 (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999)). Pennsylvania courts will apply collateral estoppel only if: "(1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; (2) the issue was actually litigated in the first action; and (3) a final judgment

on the specific issue in question was issued in the first action." *Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002). Collateral estoppel also "bars redetermination in a second prosecution of those issues *necessarily* determined between the parties in a first proceeding that has become a final judgment." *Id.* (emphasis in original).

Pennsylvania's collateral estoppel rule prevents Taggart from relitigating Wells Fargo's ownership of the mortgage now because: (1) he raised the same issue in the state courts; (2) the issue was "actually litigated"; and (3) the state courts issued a final judgment on the issue. *See id.* Taggart argued in the Court of Common Pleas that Wells Fargo lacked standing in the foreclosure action because it did not own the mortgage. The court rejected that argument, saying: "To the extent [Taggart's argument] is based on a failure of [Wells Fargo] to prove that it is the owner of the Mortgage, that proof is provided by the Corrective Assignment recorded on January 7, 2016." (Compl. Ex. F at 9–10.) Taggart raised the issue again on appeal, *see Taggart*, No. 1384-EDA-2018, 2019 WL 3500516, at *4, and the state appellate court rejected it, *id.* at *6. Additionally, whether Wells Fargo had standing in the foreclosure action was an issue the state courts "necessarily determined." *See Holder*, 805 A.2d at 502.

B

Taggart also claims Judges Ott, Lazarus and Gantman violated his federal constitutional rights in Counts XXV through XXX and asks the Court for declaratory

11

relief. *See, e.g.*, (Am. Compl. ¶¶ 474, 506, 538). As explained above, such a request is improper and fails to state a claim upon which the Court may grant relief.

C

In Counts XIII through XVI, Taggart alleges Wells Fargo committed fraud, fraud on the court, unarticulated "tortuous actions," abuse of process and malicious prosecution. *See* (*id.* at ¶¶ 197–274). Taggart requests $40,000,000 "for each fraudulent claim made in the [state] foreclosure action," (*Id.* at ¶¶ 213, 233, 253, 274) on top of asking the Court to "compel the Court of Common Pleas, of Montgomery County, Pennsylvania to vacate the judgment entered on March 27, 2018," (*Id.* at ¶¶ 211, 231, 251, 271.) The Court could dismiss Counts XIII through XVI because, like Counts I through XII, each relies on Taggart's contention that Wells Fargo lacked standing and knowingly lied to the state courts about when it took ownership of Taggart's mortgage. *See, e.g.*, (*id.* at ¶¶ 36, 47, 59, 71).

D

In Counts XVII through XXIV, Taggart alleges Phelan and Reed Smith, through their representation of Wells Fargo in state court, committed fraud, "tortuous actions," abuse of process and malicious prosecution. These claims, like those against Wells Fargo, turn on whether Wells Fargo owned the mortgage at the time of the foreclosure action. *See, e.g.*, (*id.* at ¶¶ 285–86, 376–77). Taggart seeks the same relief from Phelan and Reed Smith that he seeks from Wells Fargo. Taggart is estopped from pursuing these claims against Phelan and Reed Smith for the same reasons he is estopped from pursuing the claims against Wells Fargo.

VII

The Court has already allowed Taggart to file an Amended Complaint.[3] (Order Granting Leave to Amend, ECF No. 39.) Now he seeks leave to file a Second Amended Complaint. (Pl.'s Mot. for Leave to File Second Amended Compl., ECF No. 47.) Although Federal Rule of Civil Procedure 15 instructs courts to "freely give" leave to amend, a court may deny leave to amend if, among other things, amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Taggart's proposed Second Amended Complaint includes the same thirty Counts against the same Defendants. (Pl.'s Mot. for Leave to File Second Amended Complaint.) The only relevant substantive change is Taggart's incorporation of his arguments in response to Defendants' motions to dismiss. Because the Court has already considered and rejected those arguments—and because the proposed amendments would not cure the Amended Complaint's jurisdictional defects—Taggart's proposed amendment would be futile.

Even assuming *Rooker-Feldman* would not bar Taggart's amended claims, amendment beyond what he proposes would also be futile. Taggart could not state a claim for relief against Judges Saltz, Ott, Lazarus and Gantman because he is estopped from relitigating whether Wells Fargo had standing in the foreclosure action and backwards-looking declaratory relief is unavailable. Taggart would also be barred from seeking monetary relief because "judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000). That doctrine applies when a judge's

---

[3] Taggart filed a purported Amended Complaint (ECF No. 21) after the twenty-one-day window for amending his complaint "as a matter of course." Fed. R. Civ. P. 15(a)(1). Despite Taggart's failure to seek Defendants' written consent or leave of court to file this Amended Complaint, the Court construed his purported Amended Complaint as a Motion for Leave to Amend and granted that Motion (ECF No. 39).

actions were "judicial" in nature and were not taken in the "clear absence of all jurisdiction over the subject-matter." *Id.* at 768–69 (citation omitted). The acts Taggart complains of satisfy these parameters. Finally, Taggart bases each claim against Wells Fargo, Reed Smith and Phelan on his argument that Wells Fargo lacked standing in state court. He is estopped from relitigating that issue, so amendment would be futile for his claims against those Defendants.

      An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.